J. JACKSON and others, appellants, *v.* W. B. HART, respondent, 11 Wend. 343–361.

Not reported in Ch., but Chancellor's opinion given, 11 Wend. 346–348.

*Effect of Denial of Equity of Bill, by Oath of Defendant to New Matter in Avoidance.*

APPEAL from Chancery. W. B. Hart, the respondent, filed his bill to be relieved from the payment of a $5,000 note, which he alleged to have been given in *renewal of a loan* previously made to him by J. Jackson, on the 30th of May, 1826, for $5,000 at 30 days, and for which he gave him a note for $5,000 dollars, and hypothecated to J. 130 shares of the Jefferson Ins. Co., which he alleged to be worth $47 per share; that on the 14th of June, he borrowed a further sum of $4,000 from J., for which he also gave him a note at 60 days, and hypothecated 103 other shares of the same stock, and that Jackson retained $200 as interest; that when the first note became due, on the 28th of June, he applied for a renewal, and gave a new note for the $5,000 first lent, and paid him $225 *as interest,* that being demanded by Jackson, as a condition for renewing the loan. These two he stated were the only loans ever made to him by J., and the bill required J. to answer whether he ever made any other. The bill stated that Jackson had transferred the stocks to D. Jackson, the other defendant, and the note of the 28th of June, to one B. Hart, who was also a party to the bill, and who had commenced a suit against him upon it; also that J. Jackson, had sued him on the note of the 14th of June. The bill prayed an *injunction* staying the suits, and prohibiting a transfer of the stocks, and asked an account, and that the notes might be cancelled.

The defendant, J. Jackson, in his answer, admitted the two loans, and the hypothecation of the stocks; but as to the note of the 28th of June, he answered that *that note* was not *in renewal of the note of* the 30th of May, 1826, there never having been any such note, nor for the renewal of the other note, but for a *further loan of* $5,000, and that he lent the same to Hart, upon his representation that he was a man

12

of large real and personal estate, &c., and *without taking any security therefor.*

The cause was heard on the pleadings and proofs before the Vice Chancellor of the first circuit, in January, 1830, who decreed upon the evidence in the case, and the allegations of the parties in the bill and answer, that the note of the 28th of June, was given as and for a *renewal* of the loan of 30th of May, and not for an original or further loan of money ; that the note of 28th of June, was transferred to the defendant, B. Hart, in the ordinary course of business, and he was entitled to claim payment thereof, and that the transfer of stocks to D. Jackson, the other defendant, being to secure a *precedent debt,* D. Jackson was not entitled to retain the same, and accordingly directed the stocks to be sold, and the proceeds to be applied first to the payment of the note of the 28th of June, and the residue to the note of the 14th of June. Execution to issue for balance, and J. Jackson to pay the complainant's costs. J. and D. Jackson appealed to the Chancellor from this decree, who in October, 1832, affirmed it with costs. Upon appeal from the Chancellor's decree·of affirmance,.

The Court of Errors *reversed* the decision of the Vice Chancellor and Chancellor. Senator Tracy, who delivered an opinion in favor of *reversal,* in regard to the part of the answer of J. Jackson, alleging that the note of the 28th of June, was for a *new loan,* and not a *renewal* of the first loan, says : " To overcome this direct and unequivocal denial and assertion of the defendant, the complainant has produced no testimony that, on any safe principle of evidence, can be deemed sufficient. The improbability that the defendant should loan so large a sum as $5,000 for 45 days, without security and without interest, to a person almost a stranger, of whom he knew nothing, except that he was in pressing want of money, would certainly go far, if the testimony was otherwise nearly balanced to convince every one of the falsity of the defendant's statement. But it is not a question of balanced testimony ; it is all, as far as the proof of witnesses is concerned, in one scale. The complainant has voluntarily appealed for the evidence of the fact, to the defendant's oath ; and having done so, the evidence thus elici-

ted, must be taken for true, unless disproved. The answer as to this fact, is directly responsive to the complainant's bill and in a matter necessary to the complainant's equity; and where this is the case, as much again evidence is required to establish his allegation, as if he had not made a witness of the defendant. If the defendant's testimony on this point be entirely discredited, it will only leave the complainant without proof in any way in regard to his allegation. He discredits his own witness, by way of impeaching his veracity without otherwise supplying the evidence which he has vainly sought from him, and which evidence he must have from some quarter, in order to support his complaint.

"I feel constrained therefore by a necessary and well established principle of law to dissent from the decree of the Vice Chancellor, and to vote for reversing the Chancellor's decision affirming that decree."

From this decision Savage, Ch. J., dissented, holding that *upon the evidence,* the pretence of J. Jackson, of a new loan of $5,000, without security and without interest, was so completely discredited, that under the account given of the transaction by the defendant, and the absence of proof to support it, the complainant was entitled to relief, and that the decree of the Chancellor should be *affirmed.*

The court however *reversed* the decree, 13 senators voting for *reversal,* and the Ch. J. and 5 senators for affirmance.

---

☞ See *Hart* v. *Ten Eyck,* 2 J. C. R. 62, where Chancellor Kent held that where an answer is put in issue by filing a replication, what is confessed and admitted need not be proved; but where a *distinct fact* by way of *avoidance,* is insisted on by the answer, he must prove the fact so insisted on in defence.

An appeal, however, was taken in the cause, and Mr. Johnson, the reporter, in a note to the case in his digest, says "Spencer, Ch. J., gave a different opinion as to the latter position, in which a majority of the Court of Errors concurred, but as the case was expected to come up again, and the reporter not possessing the reasons of the court, the case was not reported."

1 Johns. Dig. 225, § 514.